GRANT & als., EX'TS, *v.* LATHROP.

By the practice of this State, the collection of executions issued, is stayed by an injunction from this court, or a judge thereof, in vacation, upon a proper case made; either before or after the issuing of a writ of error, in cases where one is issued. The court where the judgment is rendered may also suspend the issuing of execution for good cause shewn.

Section 1, chap. 193, of the Revised Statutes, provides, that no execution shall issue until the expiration of twenty-fours after judgment rendered; whether a writ of error issued within the twenty-four hours operates as a stay of execution, *quære?* It does not have that effect upon an execution legally issued after the expiration of the twenty-four hours.

Where several actions were commenced against a party, and the right to the property attached depended upon one question, and by the agreement of the five who attached first, the property was sold and the question was carried to the supreme court of the United States; and the remaining attaching creditors also entered into an agreement that their actions should abide and follow the event of the one carried to the supreme court, and that the property attached might be sold as specified in the first agreement, "but without prejudice to their rights to have the avails applied upon the executions they might obtain in their suits,"—*Held*, that all the surrounding circumstances might be taken into consideration in deciding as to the meaning of the agreement; that it could not be construed to mean that the relative rights of the attaching creditors should be altered, but that it must be understood only to mean that the parties did not intend to change their rights by virtue of the sale, but should have their claim upon the money as they would have upon the goods if not sold; that the executions should be satisfied in the order of the attachments made.

CASE, against the defendant, a deputy sheriff, for a false return upon a writ of execution. The declaration set forth, in substance, that the plaintiffs, as the executors of Samuel Grant, deceased, on the twenty-second day of September, 1849, recovered judgment, in the court of common pleas, in this county,

against Philip Peck and William Bellows, partners, doing business under the firm of Philip Peck & Co., for the sum of $425.10, damages, and $11.90, costs, to be levied only on the property attached on their original writ, or the avails of the same; on which judgment an execution was issued, October 18th, 1849, and delivered to the defendant for service, October 22d, 1849. And the plaintiffs aver that the defendant then and there had in his hands, goods of Peck & Co. and the avails thereof which had been so attached upon the original writ, more than sufficient to satisfy the execution, yet the defendant intending to deprive the plaintiffs of the sums set forth in the execution, refused to pay and satisfy the plaintiffs out of the goods in his hands, or the avails of the same, and afterwards, on the 18th day of March, 1850, returned the execution with this false return endorsed thereon, to wit: "State of New-Hampshire, Cheshire ss., March 18, 1850. The personal estate attached upon the original writ in this case, at the time of such attachment was subject to sundry prior attachments, and subsequent to such attachments it was agreed by the parties in interest, including the plaintiffs in this case, that all and singular the same should be sold by Hope Lathrop and one Aaron P. Howland, assignees of the within named defendants, and the proceeds, over the costs and charges, retained by said Lathrop and Howland, until the suit in favor of John S. Jenness and others, against said defendants, upon which the first attachment was made, should be determined, upon writ of error by the supreme court of the United States, and thereupon should be applied, in the first instance, to the satisfaction of such judgment as the said Jenness and others might recover; thereafter, the said Lathrop and Howland, in pursuance of said agreement, sold the same for $4461.53, and paid therefrom $862.06, for costs and charges of sale; that thereafter, the said Jenness and others recovered judgment upon writ of error, and the sum of $1852.43 was applied to the satisfaction of said judgment, the sum of $865.03 was applied upon an execution in favor of Shapleigh & Kelsey against said defendants, the sum of $882.01, was applied to an execution in favor of Carter & Child; so that the entire personal estate so at-

Grant *v.* Lathrop.

tached has been applied in satisfaction of attachments prior to that of the plaintiffs in this case ; and I therefore return this execution in no part satisfied from said personal estate. H. Lathrop, D. Sheriff." And the plaintiffs say that neither they, nor the said Samuel Grant, deceased, ever made any such agreement as in said return is alleged, and that the entire personal estate so attached has never been lawfully applied, by the defendant, in satisfaction of attachments prior to that of the plaintiffs in this case.

Upon the original writ in favor of the testator, there was attached by the defendant, on the tenth of October, 1842, a large quantity of goods, subject to six prior attachments on writs in favor of Jenness, Gage & Co., Crockett & Shapleigh, Carter & Child, Shapleigh & Kelsey, Cheshire bank and W. Ruggles. All of these actions were entered at the April term, 1843, and continued from term to term. At the April term, 1844, A. P. Howland, assignee in bankruptcy of Peck and Bellows, was admitted to defend the suits. The indebtedness of Peck and Bellows to the several attaching creditors, as claimed by them, was not contested in the pleadings or otherwise; but the property attached on the writs was claimed by the assignee, under the provisions of the bankrupt act.

An agreement was produced in evidence, between the prior attaching creditors (except Ruggles) and the assignee, entitled March term, 1845, which was as follows : " It is agreed that the pleadings, on the part of the defendants, in the action first named, (Jenness, Gage & Co. *v.* Peck & Bellows,) may be amended by filing new pleas and rejoinders, which have been prepared for that purpose and examined by the plaintiffs' attorney, and a joinder in demurrer is herewith filed by the defendants' attorney, upon which pleadings such judgment is to be rendered as the court may direct. That thereupon the case is to be carried, up by writ of error, to the superior court of judicature, next to be holden in the third judicial district, and such judgment is to be rendered thereon as said superior court shall direct ; and thereupon the party, against whom judgment shall be rendered, shall be at liberty to prosecute a writ of error, and if

the same shall be sued out and prosecuted within three months from the date of said judgment of said superior court, no change shall be made in the custody of the money hereafter mentioned. And it is further agreed, that the other actions above named shall stand continued in the court of common pleas, without costs, until the final judgment shall be rendered in the first named suit, after a writ of error shall have been sued and prosecuted, if one should be sued as aforesaid, within three months from the date of such judgment in the said superior court, and each of said actions shall abide the final judgment in the said first named action, and the same judgments shall be rendered in said actions as shall be finally rendered in the said first named action.

" It is further agreed that no execution shall be issued on the judgment rendered at this term in the first named action, but that the personal property attached in all the said actions shall be sold by the attaching officer and the assignee of the said Bellows and Peck, and the proceeds of such sales shall be deposited, in their joint names, in one or both of the banks in Keene until the rendition of the final judgment aforesaid, and a copy of this agreement to be filed with the said bank or banks ; and if such judgment shall be for the plaintiffs, the said money shall be applied, by the said attaching officer, to the satisfaction of said judgments in the same way as if said sales had been made by him, by virtue of executions issued on such judgments ; but if said judgment should be for the defendants, then the said assignee shall have the right to receive said money to the use of said bankruptcies. It being the intent of the parties to turn the said property into money, without affecting thereby the right of either party to the same ; and the agreement not to levy execution within thirty days after judgment as above, not to prejudice such rights as the plaintiffs now have."

An agreement was also produced in evidence, entitled in vacation of the March term, July 2, 1845, between the said Ruggles, Samuel Grant and thirteen other subsequent attaching creditors of the said Peck and Bellows, and the said assignee, which agreement was as follows : " It is agreed by the parties to the

Grant *v.* Lathrop.

above actions, that the same shall be continued, without costs to either party, until the final decision of the action proposed to be carried up to the supreme court of the United States, by virtue of an agreement for that purpose, executed by C. B. Goodrich and Thomas M. Edwards, attorneys for the parties, at March term, 1845, of said court of common pleas, and shall abide and follow the event of that action ; and that the property attached in those suits may be sold in the mode specified in that agreement, but without predjudice to the rights of these parties to have the avails applied upon the executions they may obtain in these suits. And it is further agreed, that any of the creditors in these suits, who may so elect and file their election in writing, in the cause, before the first day of December next, may have their actions entered neither party, on the record."

The defendant proved that both of said agreements were in fact executed at about the same time, and a few days prior to the July term of the superior court of judicature ; that all of said actions were entered continued in the court of common pleas at March term, and so continued on the docket until near said July term ; that at that time, under the direction of the chief justice, and to hasten the decision of the question at issue in all the actions, an agreement was made between the parties in Jenness, Gage & Co. *v.* Peck & Bellows, entitled of the March term preceding, " that the continuance which has been entered in this action be stricken off, and that judgment, upon the pleadings, be entered under the direction of the chief justice," which was accordingly done, and the agreement filed in said court.

A judgment entitled of March term, 1845, was rendered for the plaintiffs in the action of Jenness, Gage & Co. *v.* Peck & Bellows for $1818.87 damages, and $33.56, costs, upon which judgment no execution ever issued, but which was, by writ of error, carried to the superior court of this State, and afterwards to the supreme court of the United States, where said judgment was finally affirmed, at December term, 1848. Said March term ended March 28, 1845.

At September term, 1849, judgments were rendered for debt

and costs in favor of Crockett & Shapleigh, for $1000 ; of Carter & Child for $1190.68 ; of Shapleigh & Kelsey for $865.03 ; of Cheshire Bank for $595.57 ; and of W. Ruggles for $354.06 ; upon which judgments executions issued and were delivered to the defendant for service within the thirty days. The judgment of W. Ruggles was satisfied by levy on real estate ; that of Crockett & Shapleigh, by real estate and other property not now in question, for $541.47 ; and that of Carter & Child by real estate, for $311.00.

The goods attached by the defendant were sold by him and Howland, under said agreements, and the proceeds deposited by them in the banks in Keene, in their joint names. The amount of the proceeds of the sale, after deducting charges, was $3599.47. After the judgment of the court of common pleas had been affirmed by the supreme court of the United States, and the mandate had been carried into effect by the superior court of judicature of this State, the defendant was notified thereof, and $1852.43 was thereupon paid over to Jenness, Gage & Co. to satisfy their said judgment. The balance, after said executions came to his hands, was applied and returned by him on two of them, as follows : upon that of Carter & Child, $882.01 ; and of Shapleigh & Kelsey, its full amount, $865.03.

There remained unsatisfied, upon the execution of Carter & Child, $317.67 ; of Crockett & Shapleigh, $458.53 ; and of Cheshire bank, $596.56 ; to the satisfaction of which it appeared from the defendant's returns that nothing was applicable, the whole sum of $3599.47 having been absorbed by said payment to Jenness, Gage & Co., and by said applications on the executions of Crockett & Shapleigh and of Carter & Child.

A verdict was taken, by consent, for the plantiffs, for the amount of their judgment interest and costs, upon which judgment was to be rendered, or the verdict was to be set aside and judgment rendered for the defendant, or a new trial was to be granted, as the court might deem proper on the whole case.

*Wheeler*, with whom was *Chamberlain*, for the defendant.

1. The first five attaching creditors, having valid claims to an amount greater than the value of the personal property attached, might agree to apply the same or the proceeds thereof, as they chose, without the assent of the subsequent attaching creditors, if no loss or injury was thereby occasioned to the latter. And especially might they do this, with the assent of Peck and Bellows, or their assignee. Those who assented to the first agreement for the sale of the property, were the real parties in interest ; they had all the ownership in the property, and might, before judgment, agree upon a mode of sale different from that prescribed by the statute in case of sales of property taken on still execution. Rev. Stat., ch. 184, § 17. In such cases the officer is not responsible to subsequent attaching creditors, even where he neglects to apply the proceeds in his hands to satisfy the prior judgments, if his liability to the prior attaching creditors still subsists. *Com. Bank* v. *Wilkins*, 9 Greenl. Rep., 28 ; *Rich* v. *Bell*, 16 Mass. Rep., 294 ; *Munger* v. *Fletcher*, 2 Vermont Rep., 524 ; *Kingsbury* v. *Baker*, 17 Pick. 429.

Grant attached a supposed surplus which in fact had no existence, and he can have no cause of complaint on account of any proceedings prior to the judgments.

2. A writ of error before execution is a *supersedeas* at common law. 2 Bac. Abr. Error, H.; Bagley's Practice 517, 519. This rule has been regulated and somewhat changed in England by statute 6 Geo. IV.; ch. 96, § 1, but only to guard against abuses. And since the enactment of that statute it has been held there, that a writ of error *coram vobis* prevents a party who has obtained judgment, from taking execution, except by leave of court. *Sample* v. *Turner*, 6 Mees. & Wels., 152. The common law rule is still in force here, and the attachment of Jenness survived till the final judgment in 1849. 1 U. S. Stat., 84, 85, 1784, chap 20, §§ 22, 23, 25 ; 1 U. S. Stat,. 404, 1794, ch. 3 ; Rev. Stat., 371, ch. 184, § 33 ; *Allen* v. *Adams*, 17 Conn. Rep., 67. Under this rule of the common law, and under the general power which every court has over its own process, the court, upon suggestion of the defendants, would have ordered

the stay of execution, or security by the plaintiff, to refund, if his judgment should be reversed.

3. But the defendant's justification does not rest mainly upon those positions. The first five attaching creditors agreed that the property in question should go out of the custody of the law, into [the hands of Lathrop and Howland, for certain purposes expressed in their agreement; among which was, that the property should be sold by them, and that any judgment obtained on the Jenness suit should be satisfied, without execution, from the proceeds of the property. Peck and Bellows were parties to this agreement.

Lathrop and Howland thereupon sold the property, and having thus accepted the trust, were legally bound to Jenness to pay to him the full amount for which he should obtain judgment. This they were bound to pay at all events. There can be no question that when this agreement was made, Jenness and company had a valid lien upon the property by virtue of their attachments, which they intended to uphold.

4. The subsequent attaching creditors, including the plaintiffs, assented to the arrangement; for they agreed that their actions should abide and follow the event of the Jenness suit, in which the pleadings admitted the debt, but insisted that the plaintiffs had no right to the property attached. The subsequent attaching creditors, by agreeing to abide the event of that suit, agreed that Jenness should have the property, if his title under the attachment should be sustained; and they are now estopped from saying that he should not have the property. They agreed that the property attached should go out of the custody of the attaching officers, as such, into the hands of Lathrop and Howland, trustees, to be by them sold in the mode specified in that agreement, and the proceeds retained under the agreement which had been made with the prior attaching creditors. The terms of the second agreement show, that it was made in fact before the property was sold. The second agreement refers to the first, and so far as the rights of the parties thereto are concerned, adopted it. Such was the intention of Grant and the others who signed the second agreement; otherwise that instrument is really of no avail.

When there are two instruments, one of which is full and explicit as to the meaning of the parties, and the other more general, but referring to and adopting the stipulations in the former, both instruments are to be construed as containing but one agreement, in giving the proper construction to the agreement between the parties. *Rogers* v. *Kneeland*, 13 Wendell's Rep. 14. In determining the meaning of a contract the court will consider the situation and true interest of all the parties, and the subject matter, and are not governed by technical and artificial rules. *Howland* v. *Leach*, 11 Pick., 151 ; *Sumner* v. *Williams*, 8 Mass. Rep., 162, 214 ; *Odiorne* v. *Sargent*, 6 N. H. Rep., 401 ; *Knower* v. *Emerson*, 9 Pick., 422 ; *Brown* v. *Slater*, 16 Conn. Rep., 192 ; *Gray* v. *Clarke*, 11 Vermont Rep., 503 ; *Chase* v. *Bradley*, 26 Maine Rep., 531.

The language in a contract used by one party is to receive such a construction, as he, at the time, supposed the other party would give to it, or as the other party was plainly justified in giving to it. *Gennison* v. *Bancroft*, 11 Vermont Rep., 490. Such are the well established rules of construction, specially applicable to two or more instuments upon the same subject, between the same parties.

5. The clause, " without prejudice to the rights of these parties to have the avails applied upon the executions they may obtain in these suits," in the second agreement, became necessary on account of the agreement that the property attached might go out of the hands of the officer, and be deposited in the banks, in the joint names of Lathrop and Howland ; and was never intended to override the agreement that these suits should abide and follow the event of the first action.

This view of the provision is to be adopted, if it can be, consistently with the language used and with legal principles ; because such a construction does justice between the parties, and gives effect to both the agreements ; while any other construction destroys the whole intent and purpose of the first agreement. If the plaintiffs' construction is to be adopted, the second agreement does not protect Lathrop and Howland in executing the trust which they had assumed ; and the only boon which it

secures to the prior attaching creditors, is that of contesting the questions at issue at their own expense and risk, for the benefit of these plaintiffs.

6. The defendant offered to show at the trial, that the two agreements were in fact executed at about the same time, and under such circumstances as to connect them with each other as parts of the same transaction, undertaken for the mutual benefit of all the parties. The evidence was competent on the ground that the court should consider the situation of the parties, and all the attendant circumstances, in determining the construction of a contract. *Webster* v. *Atkinson*, 4 N. H. Rep., 21. An officer, in making out his justification, is not confined to the matters stated in his return. *Remmett* v. *Lawrence*, 1 Eng. Law & Eq. Rep., 260. This court have allowed the date of writs to be contradicted, and the true time of the commencement of an action to be shown by parol. *Robinson* v. *Burleigh*, 5 N. H. Rep., 225 ; *Society for Prop. Gospel* v. *Whitcomb*, 2 N. H. Rep., 227. This evidence shows that at the time the agreements were actually made, the property was legally held on the attachment in the Jenness suit. If Grant and others, who signed the second agreement, had declined to assent to the arrangement made by the first attaching creditors, the court, on application at the next term, would have permitted the parties to the first to set it aside, and would have allowed the Jenness action to be brought forward so as to save the attachment. *Hackett* v. *Pickering* 5 N. H. Rep., 19.

7. The order or mode of distribution among the prior attaching creditors, is of no importance to the plaintiffs, as that did not affect their rights.

8. If these positions are correct, it follows that the officer is justified in making the return which he did upon the plaintiffs'. execution, and *that the same was rightfully returned*, as in no part satisfied. The proceeds of the sale were properly applied otherwise ; and the plaintiffs have no cause of complaint.

9. The acts of the sheriff are to be construed favorably, and so as to save him from loss, if, consistently with law, they can be so construed. *Bissell* v. *Huntington*, 2 N. H. Rep., 142 ; *Gerrish* v. *Edson*, 1 N. H. Rep., 82.

If the defendant is charged in this case, he has no remedy. It is conceded that he applied all the proceeds of the sale to the judgments of those who attached before the present plaintiffs.

*Vose,* for the plaintiffs.

1. No execution having been issued within thirty days after March term, 1845, the attachment of Jenness and others was dissolved. And if the judgment, in that case, was in fact entered up after the lapse of thirty days, it would make no difference· *Hackett* v. *Pickering,* 5 N. H. Rep., 24. No writ of error was brought, nor any agreement entered into by Grant, until after that attachment had been dissolved.

2. The attachments of the other creditors, except Jenness and others, remained valid. The sale of the property attached was made in the manner prescribed by law for sales on execution, and the returns of the officer, on the executions, shew that the proceeds of the sale were, after judgment, in his hands and in his control. The fact that the assignee was temporarily associated with him in making the sale, and in depositing the proceeds in the banks, did not dissolve the liens created by the attachments. Rev. Stat., 369, § 17 ; do. 371, § 34. *Collins* v. *Brigham,* 11 N. H. Rep., 420. The property, until applied by him, was never out of his possession or custody, nor was it intended it should be in any event, except in case of judgment in favor of the assignee.

3. Grant made no agreement with the five first attaching creditors. Their agreement was with Bellows & Peck's assignee, and of itself could not bind Grant, except so far as it was strictly subservient to their heirs, as attaching creditors. They had no general property in the goods attached. *Goddard* v. *Perkins,* 9 N. H. Rep., 488.

4. The agreement of Grant and the subsequent attaching creditors was with the assignee only. It was made July 2, 1845, which, as the court may judicially take notice, was on the first day of the July term. It was not contemporaneous with the other, which had been made at least a few days prior to that term. It did not adopt the other and referred to it for two

Grant *v.* Lathrop.

purposes only: — one to prescribe the time and nature of the judgment to be rendered in the actions of the parties to the agreement; — the other to point out the mode in which the attached property might be sold and converted into money. By no rule of construction can this agreement be held to authorize the application of any part of the proceeds of the sale to the payment of the judgment of Jenness. On the contrary, it expressly provides, that it is not to prejudice the rights of the parties to it, to have the avails applied on the executions they might obtain. These rights, so far as the suit of Jenness was concerned, had then become fixed by the previous dissolution of his attachment, which has not since been revived. This agreement is explict and certain, as to its parties and in its terms, and not of a character to be enlarged by construction or varied by parol evidence. 1 Greenl., Ev. 315.

5. The officer is under no liability to any of the first five attaching creditors, having conformed to the agreement they made in relation to the subject matter; nor to Ruggles, his execution having been otherwise satisfied, to his acceptance. Nor would he have been liable to Jenness, had he applied the proceeds of the sales in satisfaction of the other subsisting attachments, in their order, that part of the first agreement which related to the satisfaction of the judgment of Jenness having failed for want of proper parties to that agreement.

Whether the officer has proceeded thus far, with or without an indemnity, the case does not find; nor do we conceive it to be material in this suit. He was in a position before making the sale to have obtained an indemnity, if he required it.

*Goodrich*, of Mass., in reply.

EASTMAN, J. The facts of this case have required a longer statement than that of ordinary transfers, and the questions presented, have been argued at some length and with ability. But we think the decision of the case lies within a narrow compass.

In October, 1842, the property of Peck and Bellows, to the

Grant *v.* Lathrop.

amount of several thousand dollars, was attached, by order of his creditors, twenty in number or more, by the defendant, as deputy sheriff. Jenness, Gage & Co. were the first in the order of the attachments, and the plaintiffs' testate the seventh. Peck and Bellows afterwards went into bankruptcy and the assignee claimed the property. In order to test his rights, it became necessary to obtain the decision of the supreme court of the United States, as to the effect of the attachments. The actions had all been entered in the common pleas and were regularly pending there in July, 1845, when the agreements were entered into ; the actions having been continued at the previous March term. The first agreement provided, that steps should be taken, by having a judgment entered in the common pleas and superior court, to carry the Jenness action to the supreme court of the United States ; that the other actions should be continued in the common pleas, without costs to either party, till the Jenness one should be decided, and should abide that decision ; that no execution should be issued in the Jenness action on the common pleas judgment, but that the property should be sold by the defendant and assignee, and the money deposited in the banks of Keene ; and after the decision, if in favor of the creditors, that the money should be applied in satisfaction of the judgments.

The Jenness action was accordingly carried to the supreme court of the United States, and a decision had in favor of the attaching creditors. Judgments were then entered for the creditors, and the defendant applied the money in the order of the attachments.

Now the ground of the plaintiffs' claim is this : that a judgment having been entered in the common pleas, as of March term, 1845, in the Jenness action, and no execution issued thereon within thirty days thereafter, the attachment of Jenness was lost ; and that a portion of the money subsequently applied to the payment of that claim should have been applied to the satisfaction of the plaintiffs.

Were we to be governed by the record alone, the position of the plaintiffs would be entirely correct, for the record shows the

judgment to have been entered at the March term, 1845, and no execution issued, and the judgment satisfied in 1849. From this it would appear, that the attachment of Jenness and company, was dissolved, and as a necessary consequence the rights of the subsequent attaching creditors advanced.

But a writ of error was issued to the common pleas by this court and it is argued that the execution was thereby superseded. This is a matter of statute regulation in the courts of the United States, and, with certain limitations, a writ of error operates as a *supersedeas* of execution. But we do not think any such rule has ever prevailed in this State. By our statute, execution cannot issue until the expiration of twenty-four hours after judgment rendered. Rev. Stat., chap. 193, § 1. But we have no provision like that contained in the statutes of the United States. In New-York an execution may be taken out immediately on judgment being perfected, subject to being defeated by a writ of error, filed in four days thereafter. 7 Cowen's Rep., 490 ; 1 Cowen, 15. And a writ of error within the four days supersedes the execution. *The People* v. *Judges of N. Y. Com. Pleas,* 1 Wendell's Rep., 81. But this will not be the case where more than four days have elapsed, from the time of perfecting the judgment, unless there has been an order staying the proceedings. 7 Cowen, 418. From this it would seem that were a writ of error to issue within the twenty-four hours after judgment rendered, it might supersede the execution, but not afterwards. This court, or a judge thereof in vacation, may grant an injunction, on a proper case made, to stay the collection of an execution, either before or after the issuing of a writ of error. And the court where the judgment is, may make an order suspending the issuing of the execution. But a writ of error cannot of itself operate as a stay of execution, unless possibly where it issues within the twenty-four hours after judgment.

It is not however our intention to examine this point any further, as our decision does not rest upon it. It is the agreement of the parties that in our judgment is to control the case. No exception is taken to the sale of the property. That is provided

Grant *v.* Lathrop.

for in both agreements.   Nor does any doubt exist that the money was properly applied, according to the terms of the first agreement.   The plaintiffs admit thus much in their argument. But inasmuch as they were not parties to the first agreement, the question arises whether, by the terms of the second agreement, to which they were parties, the defendant was authorized to apply the money in the manner in which he did.

Although parol evidence cannot be received to contradict a written contract, yet there is no principle which prohibits a court from availing itself of all the surrounding circumstances attending a transaction, that may aid them in construing the meaning of an agreement entered into.   The agreements, in this case, were in fact executed in July, 1845.   The object in view was to ascertain as expeditiously and economically as possible what the decision of the supreme court of the United States would be in regard to the matter.   These plantiffs' were interested to know the decision as well as others ; and these agreements were entered into for that purpose.   The thirty days within which execution should issue after rendition of judgment had actually passed when the agreements were signed ; and it is not to be supposed that it could then have been contemplated, by any one of the parties, that the subsequent attaching creditors were to step in and occupy the position of Jenness, Gage & Co.   Nor is it to be credited, that Jenness, Gage & Co., would be so magnanimous as to carry the question to the supreme court of the United States, for the sake of having it decided, when such a course, let the decision be what it might, must result in the loss of their debt.   Before arriving at any such conclusion, we should require the fact to be shewn by unmistakable language.   But we think that by a fair construction of the second agreement the defendant was justified in applying the money as he did.   The agreement provides, in substance, that the actions shall be continued without costs to either party until the final decision of the Jenness action, " and shall abide and follow the event of that action," that the property attached in the suits specified in the first agreement may be sold, " but without prejudice to the rights of these parties to have the avails applied upon the executions they

VOL. XXIII.            11

may obtain in these suits." The only doubt, as to the meaning of the agreement, consists in the proper construction to be given to the last phrase ; and when we take that in connection with the whole transaction, we think there can be very little doubt in regard to that. It must be understood to refer to the sale of the goods, and to mean that the parties did not intend to change their rights, by virtue of the sale, but should have the same claim upon the money that they would have had upon the goods if not sold ; that the executions should be satisfied in the order of the attachments made.

The partes to the second agreement were, in good faith, as much bound to have their actions abide by, and be subsequent to, that of Jenness, Gage & Co., who prosecuted their suit in the supreme court for the benefit of all concerned, as were the parties to the first agreement ; and we find nothing in the second agreement which requires a different result. The additional provision that the actions might be entered neither party, might perhaps be an inducement with some, to sign the second agreement rather than the first.

We might go into an examination of other matters suggested in the argument ; but it is unnecessary. The point decided goes to the foundation of the action.

*Judgment on the verdict.*